UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHYLLIS B. CERRATO and
GERMAN CERRATO,

      Plaintiffs,

v.                                                  Case No. 8:16-cv-3077-T-24 JSS

NUTRIBULLET, LLC and
CAPITAL BRANDS, LLC,

      Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendants' Motion for Sanctions for Spoliation of Evidence. (Doc. No. 53). Plaintiffs oppose the motion (Doc. No. 59), and Defendants have filed a reply brief (Doc. No. 73). Defendants also request an evidentiary hearing and oral argument; however, the Court finds that a hearing is not necessary. As explained below, the motion is denied in large part.

**I. Background**[1]

Plaintiffs Phyllis and German Cerrato bought Defendants' Nutribullet Pro 900 blender on December 20, 2014. Once home with the blender, Mrs. Cerrato opened the blender and placed ingredients inside it to make a smoothie. She turned the blender on, and once the ingredients reached her desired consistency, she attempted to turn the blender off, but she contends that she was unable to do so.

The blender does not have an "on/off" switch. Instead, the blender consists of a cup that

---

[1]The background regarding Mrs. Cerrato's use of the blender is presented in the light most favorable to Plaintiffs solely to provide context for this motion.

holds the ingredients to be blended, a lid that contains the blending blades, and a base that contains the motor. There are three locking tabs on the cup that are used to physically secure the cup onto the motor base. When the cup is twisted into the base, the motor turns on; when the cup is twisted off the base, the motor turns off.

Because Mrs. Cerrato was unable to twist the cup off and stop the motor, she unplugged the blender to make it stop. She contends that she waited approximately twenty minutes for it to cool down before trying to open it. When Mrs. Cerrato tried to open the lid, the contents inside the cup exploded, severely burning her and causing property damage to her kitchen.

As a result of the incident, Plaintiffs filed suit against Defendants, asserting three claims. In Count I, Plaintiffs assert a negligence claim based on Defendants' alleged defective design of the blender and alleged inadequate warnings of serious injury that could result from the blender overheating. In Count II, Plaintiffs assert a strict liability claim, alleging that the blender's design and inadequate warnings made it defective and unreasonably dangerous. In Count III, Plaintiffs assert a breach of express and implied warranties claim.

Based on the evidence and briefings before the Court on Defendants' pending motion for summary judgment, Plaintiffs' design defect and inadequate warning claims can be more specifically described as the following: First, Plaintiffs contend that the blender has a design defect in that it should have a motor timer set to approximately one minute and/or a second thermal cut-off switch in order to prevent the blender from overheating. Second, they contend that the blender came with inadequate warnings because the warnings do not adequately inform the user of the temperature and pressure dangers that occur if the blender is used for more than one minute.

**II. Motion for Sanctions for Spoliation**

Defendants move for sanctions for spoliation of evidence because when their expert received the subject blender for testing and analysis, the three locking tabs that connect the cup to the base were broken off. The relevant chain of custody for the blender begins with Plaintiffs' expert having custody of the blender and the locking tabs being intact; this is undisputed. (Doc. No. 53, p. 6; Doc. No. 59, p. 3; Doc. No. 73, p. 6). After analyzing the blender, Plaintiffs' expert sent the blender (packed in its original box and placed inside the shipping box) back to Plaintiffs' counsel via FedEx. According to Plaintiffs, the box was not opened at Plaintiffs' counsel's office (Doc. No. 59-2), and the parties agree that a runner from Plaintiffs' office hand-delivered the boxed blender to Defendants' counsel's office (Doc. No. 53, p. 9; Doc. No. 59-7). According to Defendants, Defendants' counsel did not open the box but placed the box inside a larger box for shipment to their expert. (Doc. No. 53, p. 9). Someone from Defendants' counsel's office took the boxed blender to FedEx and shipped it to Defendants' expert. (Doc. No. 53-9). According to Defendants, when their expert opened the box, the three locking tabs were broken off the cup and could not be found. (Doc. No. 53-10).

Defendants submitted video evidence of their expert un-boxing the blender upon receipt. (Doc. No. 71). Defendants' expert states in an affidavit that the broken locking tabs were not found in the motor base or anywhere in the box or packaging. (Doc. No. 73-5, ¶ 9). Additionally, Defendants' expert analyzed the area of the broken tabs and concluded that the fracture sites reveal fracture patterns in different directions that could not have happened at the same time during use of the blender. (Doc. No. 53-12). He further opined that the locking tabs appear to have been intentionally broken off at separate times based on the different fracture

3

directions. (Doc. No. 53-12). Based on this evidence, as well as affidavits of Defendants' counsel and both defense experts that handled the box stating that they did not damage the blender (Doc. No. 73, attachments 1–6), Defendants argue that Plaintiffs, Plaintiffs' counsel, or their expert broke the locking tabs off the cup and should be sanctioned.

Plaintiffs respond with affidavits from all of their counsel's law firm's employees stating that they did not tamper with or damage the blender. Plaintiffs' expert stated at his deposition that he returned the blender in the same condition as when he received it.

In the instant motion, Defendants seek sanctions for spoliation of evidence—the breaking off of the three locking tabs from the cup. Specifically, Defendants seek the following sanctions: (1) dismissal of the case with prejudice; (2) an adverse inference jury instruction that had the blender cup been properly preserved, it would have shown that Mrs. Cerrato could have untwisted the cup from the base and turned the blender off without difficulty; or (3) that Defendants be allowed to present evidence at trial about the circumstances surrounding the missing locking tabs.

The standard and analysis this Court applies has been described as follows:

> "Spoliation" is the intentional destruction, mutilation, alteration, or concealment of evidence. Federal law governs the imposition of sanctions for spoliation of evidence in a diversity action. The Eleventh Circuit has held that appropriate sanctions for spoliation may include, among other things, (1) dismissing the case; (2) excluding expert testimony; or (3) instructing the jury that spoliation of evidence raises a presumption against the spoliator. To establish spoliation, the party seeking sanctions must prove several things; first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense. However, a party's failure to preserve evidence rises to the level of sanctionable spoliation "only when the absence of that evidence is predicated on bad faith," such as where a party

> purposely loses or destroys relevant evidence. "Mere negligence" in losing or destroying [the item] is not enough for an adverse inference, as "it does not sustain an inference of consciousness of a weak case." If direct evidence of bad faith is unavailable, bad faith may be founded on circumstantial evidence when the following criteria are met: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

Walter v. Carnival Corp., 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)(internal citations omitted).

Thus, in order for this Court to impose a sanction for spoliation, Defendants have the burden of showing: (1) that the locking tabs used to be on the blender cup; (2) that Plaintiffs had a duty to preserve the evidence; (3) that the locking tabs being attached to the cup is crucial for Defendants to be able to prove their defense; and (4) that the breaking off of the locking tabs was done by Plaintiffs in bad faith.

While Defendants have met their burden of showing the first two elements, they do not meet their burden of showing the third and fourth elements. Specifically, Defendants have not shown the third element—that the locking tabs being attached to the cup is crucial for Defendants to be able to prove their defense. "It is not enough that the spoliated evidence would have been relevant to a . . . defense." Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 736 F. Supp.2d 1317, 1327 (S.D. Fla. 2010)(citation omitted). Furthermore, "[e]vidence is not crucial if it is available from an alternate source." U.S. ex rel. King v. DSE, Inc., 2013 WL 610531, at *8 (M.D. Fla. Jan. 17, 2013), *adopted by* 2013 WL 608541 (M.D. Fla. Feb. 19, 2013).

Plaintiffs argue that Defendants are not prejudiced in any way by the damage to the

5

locking tabs, because Defendants can run tests on an exemplar cup, which is what Plaintiffs' expert did. Furthermore, Plaintiffs argue that this is a design defect case, not a manufacturing defect case, so the fact that the locking tabs were broken off the subject cup is easily remedied by using an exemplar cup. Finally, Plaintiffs point out that they have no expert opinion that the locking tabs were defective—the locking tabs are a non-issue to Plaintiffs' case.

Defendants respond that Plaintiffs' complaint and answers to interrogatories refer to manufacturing defects. However, given Plaintiffs' representations in response to the instant motion that they are not pursuing a manufacturing defect claim, the Court will hold Plaintiffs to their word if this case goes to trial.

Defendants also argue that the heart of Mrs. Cerrato's story is that the cup got locked in the on position and could not be twisted off to stop the blender, which led to the overheating. Thus, Defendants allege that they are severely prejudiced by being unable to test the locking tabs on the subject blender to disprove Mrs. Ceratto's allegation that the cup got locked in the on position. While the Court understands Defendants' desire to test the subject cup, it is no longer available with the locking tabs attached. Given that Defendants can still test exemplar cups, and given that Plaintiffs are not alleging a manufacturing defect, the Court finds that Defendants' ability to test the subject cup in its original condition is not *crucial* to their defense.[2]

More importantly, however, is the fact that Defendants have not shown the fourth element required for spoliation sanctions—that the breaking off of the locking tabs was done in

---

[2]Additionally, the Court notes that in their pending motion for summary judgment, Defendants point out that Plaintiffs' expert has stated in his deposition that when running the blender for one minute, there is no problem with untwisting the cup from the base in order to turn the blender off, as long as you twist the cup in the correct direction. (Doc. No. 51-2, depo. p. 85–87).

bad faith. As there is no direct evidence of bad faith, Defendants attempt to show bad faith using circumstantial evidence. In order to do so, Defendants must show all four of the following things: (1) the locking tabs used to be attached to the cup and that evidence could fairly be supposed to have been material to Defendants' defense; (2) Plaintiffs engaged in an affirmative act causing the tabs to be broken off of the cup; (3) Plaintiffs did so while they knew or should have known of their duty to preserve the evidence; and (4) the affirmative act causing the damage to the locking tabs cannot be credibly explained by Plaintiffs as not involving bad faith.

Defendants, however, have not shown by a preponderance of the evidence that Plaintiffs (or their counsel or their expert) engaged in an affirmative act causing the tabs to be broken off of the cup. The evidence before the Court does not prove when in the chain of custody the blender cup was damaged. Without knowing when the blender cup was damaged, the Court cannot determine who damaged the cup or how it was damaged.[3]

Even if the Court were to assume that the cup was damaged prior to it reaching Defendants' possession, it is possible that the cup was damaged accidently or negligently, rather than recklessly or intentionally. However, the specific type of conduct that led to the damage (i.e., accidental or negligent versus reckless or intentional) must be analyzed in order to support a finding of bad faith. While Defendants do not need to prove malice to support a finding of bad faith, they must prove more than mere negligence. See Oil Equipment Co. Inc. v. Modern Welding Co. Inc., 661 Fed. Appx. 646, 653 (11th Cir. 2016)(citations omitted). The evidence before the Court does not prove that Plaintiffs acted in bad faith, and there is no reason to believe

---

[3]Defendants make much of the fact that Plaintiffs sent a runner to hand-deliver the blender to defense counsel prior to defense counsel agreeing to accept the blender. Defendants also point out that they had asked Plaintiffs' counsel to ship the blender directly to Defendants' expert, with Defendants paying for the shipping, but Plaintiffs did not do so. These facts do noy prove that Plaintiffs damaged the blender cup.

that an evidentiary hearing would reveal new or different evidence. Defendants have the burden of proving spoliation in order to obtain sanctions, and Defendants have not met their burden.

Given this conclusion, the Court denies Defendants' request for sanctions of dismissal or an adverse inference jury instruction. At trial, Defendants may present evidence of an exemplar cup or of testing done on the locking tabs of an exemplar cup. If Plaintiffs offer evidence that the exemplar cup is not the subject cup, then Defendants will be allowed to present evidence at trial to explain why they used an exemplar cup and the circumstances surrounding their discovery of the damaged cup.

### III. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion for Sanctions for Spoliation of Evidence (Doc. No. 53) is **DENIED** as to Defendants' request for the sanctions of dismissal or an adverse inference jury instruction. As to Defendants' request to allow them to present evidence at trial about the circumstances surrounding the damage to the cup's locking tabs, the Court denies this request unless Plaintiffs open the door by offering evidence that Defendants proffered or tested an exemplar cup as opposed to the subject cup.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of November, 2017.

Copies to:
Counsel of Record

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge