UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHYLLIS B. CERRATO and
GERMAN CERRATO,

     Plaintiffs,

v.                                                                Case No. 8:16-cv-3077-T-24 JSS

NUTRIBULLET, LLC and
CAPITAL BRANDS, LLC,

     Defendants.
_____/

## ORDER

This cause comes before the Court on Defendants' Motion to Strike the Testimony of Plaintiffs' Expert and Motion in Limine to Preclude His Testimony. (Doc. No. 52). Plaintiffs oppose the motion. (Doc. No. 61). As explained below, the motion is denied in large part.

### I. Background[1]

Plaintiffs Phyllis and German Cerrato bought Defendants' Nutribullet Pro 900 blender on December 20, 2014. Once home with the blender, Mrs. Cerrato opened the blender and placed ingredients inside it to make a smoothie. The ingredients she used were tap water, ice cubes, a cup of refrigerated beet leaves, half of a refrigerated avocado, a handful of refrigerated blueberries, one banana, and one half of an apple. (Doc. No. 26-4, depo. p. 50–53). She turned the blender on, and once the ingredients reached her desired consistency, she attempted to turn the blender off, but she contends that she was unable to do so.

The blender does not have an "on/off" switch. Instead, the blender consists of a cup that

---

[1] The background regarding Mrs. Cerrato's use of the blender is presented in the light most favorable to Plaintiffs solely to provide context for this motion.

holds the ingredients to be blended, a lid that contains the blending blades, and a base that contains the motor. There are three locking tabs on the cup that are used to physically secure the cup onto the motor base. When the cup is twisted into the base, the motor turns on; when the cup is twisted off the base, the motor turns off.

Because Mrs. Cerrato was unable to twist the cup off and stop the motor, she unplugged the blender to make it stop. She contends that she waited approximately twenty minutes for it to cool down before trying to open it. When Mrs. Cerrato tried to open the lid, the contents inside the cup exploded, severely burning her and causing property damage to her kitchen.

As a result of the incident, Plaintiffs filed suit against Defendants, asserting three claims. In Count I, Plaintiffs assert a negligence claim based on Defendants' alleged defective design of the blender and alleged inadequate warnings of serious injury that could result from the blender overheating. In Count II, Plaintiffs assert a strict liability claim, alleging that the blender's design and inadequate warnings made it defective and unreasonably dangerous. In Count III, Plaintiffs assert a breach of express and implied warranties claim.

Plaintiffs' expert, Dr. Glen Stevick, has opined that the subject blender has the following defects: (1) there is no pressure relief device built into the blender cup; (2) there are no indicators for pressure buildup; (3) there is no obvious way to judge the danger of, or amount of, pressure and heat buildup without handling the cup directly, thereby exposing the user to the release of hot contents; (4) the temperature limit of the HTTS (a device inside the blender that turns the blender off when it detects high temperature conditions) is far too high to protect the user, as it is well above the water boiling temperature; (5) the HTTS does not limit the temperature of the blender or protect the user from hot and pressurized contents; (6) the location of the HTTS

2

prevents it from protecting the user, because it is located directly above the exhaust fan; (7) there are no timers in the electrical control system, and since the amount of energy added to the contents blended is directly proportional to the time the motor is running, a motor shut-off timer is crucial in safeguarding the user; (8) without a motor timer and/or a second thermal cut-off switch, the design is defective; and (9) the warnings provided by Defendants do not adequately inform the user of the temperature and pressure dangers that can cause bodily injury. (Doc. No. 51-1).

## II. Motion to Strike Based on *Daubert*

Defendants move to Strike Dr. Stevick's expert testimony based on Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702. Furthermore, this Court must act as a gatekeeper to ensure that Rule 702 is complied with. As explained the Eleventh Circuit:

> [Trial courts must act as gatekeepers and] engage in a "rigorous three-part inquiry" assessing whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in

3

> Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong.

Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1194 (11th Cir. 2010)(internal citations omitted).

Defendants do not argue that Dr. Stevick is not qualified. He is a mechanical engineer specializing in failure analysis and the design of electro-mechanical equipment and systems. He has a Master's degree and a Ph.D. in Mechanical Engineering, and he has more than thirty-five years of experience as an engineer.

Instead, Defendants take issue with his methodology, the reliability of his opinions, and the helpfulness of his opinions. Specifically, Defendants make the following five arguments: (1) his opinion is not based on Plaintiffs' time estimates for how long the blender ran; (2) his opinion that Plaintiffs were distracted in order to explain their time estimates is not supported by the facts; (3) his opinions are based on testing the blender using water, as opposed to using the colder ingredients of fruit and ice that Mrs. Cerrato said that she used, and did not account for the twenty minute cool-down period that Mrs. Cerrato described; (4) his opinion does not explain away alternate theories, including the strange noise Mr. Cerrato had said that he heard; and (5) based on the above, his opinion will confuse the jury and unfairly prejudice Defendants. Accordingly, the Court will address each argument.

First, Defendants argue that Dr. Stevick's opinion is not based on Plaintiffs' time estimates for how long the blender ran. Specifically, Defendants point out that Dr. Stevick has stated that the explosion that occurred could not have been caused by the blender running for

4

only six minutes. (Doc. No. 51-2, depo. p. 72–74, 76–79). He opines that the blender had to have been running for ten to twenty minutes before Mrs. Cerrato unplugged it in order for the contents inside to get hot enough to cause Mrs. Cerrato's burns. (Doc. No. 51-2, depo. p. 72, 77, 79). Because Dr. Stevick's opinion is based on facts entirely different from Plaintiffs' version of the facts (i.e., how long the blender ran), Defendants argue that his opinion is not based on sufficient facts or data and must be stricken. The Court disagrees.

Dr. Stevick's opinion is based on sufficient facts, as he ran tests to determine how long the blender would have to run to reach the temperature necessary to overheat and cause Mrs. Cerrato's injuries. The fact that his opinion regarding how long the blender would have had to run conflicts with Plaintiffs' estimates can be brought to the jury's attention through cross-examination by Defendants. That fact does not render Dr. Stevick's opinion inadmissible.

Second, Defendants argue that Dr. Stevick's opinion that Plaintiffs were distracted in order to explain their time estimates is not supported by the facts and is instead pure speculation. Specifically, Defendants argue that Plaintiffs testified that Mrs. Cerrato was within arm's reach of the blender during the entire time it ran, so there is no basis for Dr. Stevick's opinion that the reason why Plaintiffs' time estimates differ dramatically from those necessary to support his opinion is because they were distracted.

The Court agrees with Defendants that Dr. Stevick's opinion that Plaintiffs were distracted should be stricken. Additionally, the Court notes that whether or not Plaintiffs were distracted is a conclusion that the jury can form without the aid of expert testimony. Accordingly, the Court will not allow the expert to opine that the reason why Plaintiffs' time

5

estimates differ dramatically from his opinion is because they were distracted.[2]

Third, Defendants argue that Dr. Stevick's opinions are based on testing the blender using water, as opposed to using the colder ingredients of fruit and ice that Mrs. Cerrato said that she used, and did not account for the twenty minute cool-down period that Mrs. Cerrato described. Defendants point out that their expert has opined that when only water is blended inside the cup, the blade will rotate unimpeded, faster, and with less resistance creating greater heat from friction. (Doc. No. 51-3, p. 20 of 55). Thus, Defendants argue that because Dr. Stevick's opinions are not based on the undisputed facts of this case, his opinions are not based on sufficient facts, he applies improper methodology, and his opinions should be stricken. The Court disagrees.

Dr. Stevick gave the following reasons why he used water in his tests instead of the actual ingredients: "Because most fruits are mostly water. You won't get a significantly different answer. And it's a big mess." (Doc. No. 51-2, depo. p. 84). While this answer does not address his failure to use ice or to incorporate the twenty minute cooling period after the blender was turned off, these failures can be brought out during cross-examination. His opinions based on his testing of the blender using water are still relevant to this case. Defendants are free to argue that the use of fruit and ice, as well as applying the cooling off period, would have likely increased the amount of time that the blender was running in order to overheat compared to the time estimates from Dr. Stevick's testing.

---

[2]Likewise, Dr. Stevick may not opine that Plaintiffs were distracted, even if this opinion is not made to explain the time estimate difference. However, Dr. Stevick may testify that users can get distracted when using a blender and that distraction is something that should be considered by Defendants when creating their product and the accompanying warning.

Fourth, Defendants argue that Dr. Stevick's opinion does not explain away alternate theories, including the strange noise Mr. Cerrato had said that he heard. Specifically, Mr. Cerrato stated that he had heard the blender making a loud, escalating noise before they shut it off. (Doc. No. 26-5, depo. p. 20–21). Thus, Defendants argue that Dr. Stevick's opinion fails to consider other possible explanations for the incident.

Defendants, however, do not explain how the noise Mr. Cerrato described is evidence of another possible explanation for the incident. To the extent that Defendants can argue that there are other explanations that Dr. Stevick's opinion does not account for, they are free to raise such arguments through cross-examination.

Fifth, Defendants argue that based on the above, Dr. Stevick's opinion will confuse the jury and unfairly prejudice Defendants. However, the Court has found that the only meritorious argument proffered by Defendants is that Dr. Stevick should not be allowed to opine that Plaintiffs were in fact distracted while the blender was on. As such, the Court finds that Dr. Stevick's opinions will not confuse the jury or unfairly prejudice Defendants. Accordingly, the Court denies Defendants' motion to strike Dr. Stevick's opinions based on <u>Daubert</u>, except to the extent that he cannot opine that Plaintiffs were, in fact, distracted while operating the blender.

### III. Motion in Limine

Defendants do not differentiate their motion to strike Dr. Stevick's testimony based on <u>Daubert</u> and their motion in limine to preclude his testimony. Thus, for the same reasons as stated above, the Court denies Defendants' motion in limine to exclude Dr. Stevick's testimony, except to the extent that he cannot opine that Plaintiffs were, in fact, distracted while operating the blender.

**IV. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion to Strike the Testimony of Plaintiffs' Expert and Motion in Limine to Preclude His Testimony (Doc. No. 52) is **DENIED**, except to the extent that Dr. Stevick may not opine that Plaintiffs were distracted while operating the blender.

**DONE AND ORDERED** at Tampa, Florida, this 7th day of November, 2017.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge