UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHYLLIS B. CERRATO and
GERMAN CERRATO,

      Plaintiffs,

v.                                                 Case No. 8:16-cv-3077-T-24 JSS

NUTRIBULLET, LLC and
CAPITAL BRANDS, LLC,

      Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendants' Motion for Summary Judgment. (Doc. No. 51). Plaintiffs oppose the motion. (Doc. No. 58). As explained below, the motion is denied.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## II. Background

Plaintiffs Phyllis and German Cerrato bought Defendants' Nutribullet Pro 900 blender on December 20, 2014. Once home, Mrs. Cerrato unboxed the blender in order to make a smoothie. She placed ingredients inside the blender cup, and turned the blender on. Once the ingredients reached her desired consistency, she attempted to turn the blender off, but she was unable to do so.

The blender does not have an "on/off" switch. Instead, the blender consists of a cup that holds the ingredients to be blended, a lid that contains the blending blades, and a base that contains the motor. When the cup is twisted into the base, the motor turns on; when the cup is twisted off the base, the motor turns off.

Because Mrs. Cerrato was unable to twist the cup off and stop the motor, she unplugged the blender to make it stop. She then waited approximately twenty minutes for it to cool down before trying to open it. When Mrs. Cerrato tried to open the lid, the contents inside the cup exploded, severely burning her and causing property damage to her kitchen.

The directions that came with the blender provide the following information about how to blend items after putting ingredients into the blender cup and attaching the lid to the cup:

> Press the vessel blade side-down onto the Power Base and extract for no longer than 1 minute. If more extraction is needed, wait 1 minute, then repeat the extraction process in 1 minute intervals up to 3 times as needed to achieve the desired consistency. If more than 3 1-minute extractions are needed, allow the power base to cool for 2–3 minutes after the third extraction before beginning the next round.

(Doc. No. 26-1, p. 4). The directions also contained a page titled, "IMPORTANT SAFEGUARDS AND CAUTIONARY INFORMATION," and it provided the following pertinent instructions:

2

- Never allow the motor to run for more than **one minute** at a time, as it can cause permanent damage to the motor. If the motor stops working, unplug the Power Base and let it cool for an hour before attempting to use it again. Your **NUTRIBULLET** has an internal thermal breaker that shuts off the unit when it overheats. . . .

   \*   \*   \*

- Never leave the **NUTRIBULLET** unattended while it is in use.

(Doc. No. 26-1, p. 2). Finally, the blender itself has the following warning printed directly on the motor base: "Do not operate continuously for more than 1 minute." (Doc. No. 26-2).

According to Plaintiffs' expert, Dr. Glen Stevick, the explosion occurred because the blender was defectively designed. Specifically, he analyzed the incident and stated the following:

> The blender is designed for blending; it is not designed for cooking. However, the frictional energy imparted to the cup contents by the blending action can and will heat up the contents inside of the cup. . . . Heat buildup inside of a constant volume (i.e. the cup container) will lead to a pressure increase. . . . There is no pressure relief built into the cup other than unscrewing the lid. . . . There are no indicators for pressure build-up except resistance upon untwisting. . . . There is no obvious way to judge the danger of or amount of pressure and heat buildup without handling the cup directly, thereby exposing oneself to release of hot contents.

(Doc. No. 51-1, ¶ 23–27). He opined that one of the ways that the blender is defective is as follows:

> As the amount of energy added to the contents being blended is directly proportional to the time the motor is running, a timer is crucial in safeguarding the user. [The warning] only warns against running [the blender] for more than a minute. Without a motor timer (set to approximately 1 minute) and/or a second thermal cut-off switch, this is a defective design. . . . The addition of a timer to the electrical circuit would be a minimal expense (likely on the order of 50 cents).

(Doc. No. 51-1, ¶ 43–44). Additionally, he opined that the blender was defective because Defendants' warnings were inadequate because they "do not adequately inform the user of the

3

temperature and pressure dangers that occur if the unit is used for more than 1 minute." (Doc. No. 51-1, ¶ 50).

As a result of the incident, Plaintiffs filed suit against Defendants, asserting three claims. In Count I, Plaintiffs assert a negligence claim based on Defendants' alleged defective design of the blender and alleged inadequate warnings of serious injury that could result from the blender overheating. In Count II, Plaintiffs assert a strict liability claim, alleging that the blender's design and inadequate warnings made it defective and unreasonably dangerous. In Count III, Plaintiffs assert a breach of express and implied warranties claim.

## III. Motion for Summary Judgment

Defendants now move the Court to grant summary judgment on all three counts based on two main arguments: (1) Plaintiffs cannot prove causation; and (2) Plaintiffs' inadequate warning theory is deficient. Accordingly, the Court will address both arguments.

### A. Causation

Defendants argue that they are entitled to summary judgment because Plaintiffs cannot prove causation. While the parties appear to agree that Mrs. Cerrato used the blender and that when she opened the lid, the contents exploded, the parties dispute three critical facts. First, the parties dispute whether Mrs. Cerrato read the instruction manual before using the blender, because she has made conflicting statements on this issue. The instructions warn not to run the blender for more than one minute at a time. Second, the parties dispute how long Mrs. Cerrato let the blender run before turning it off, as she has given conflicting estimates. Third, the parties dispute whether Mrs. Cerrato left the blender unattended, as she has made conflicting statements on this issue as well.

4

One of the main disputes in this case is how long the blender remained running before it was turned off. Plaintiffs have given differing estimates, but their longest estimate is that the blender ran for six minutes before being unplugged. However, Plaintiffs' own expert has opined that the explosion that occurred could not have been caused by the blender running for only six minutes. (Doc. No. 51-2, depo. p. 72–74, 76–79). He opines that the blender had to have been running for ten to twenty minutes before Mrs. Cerrato unplugged it in order for the contents inside to get hot enough to cause Mrs. Cerrato's burns. (Doc. No. 51-2, depo. p. 72, 77, 79). As a result, Defendants argue that Plaintiffs cannot show that a design defect or inadequate warnings *caused* Mrs. Cerrato's injuries, because the accident could not have occurred under Plaintiffs' version of the facts. Stated differently, Defendants contend that since Plaintiffs' own expert has opined that the incident could not have occurred under Plaintiffs' version of the facts—that they only allowed the blender to run for up to six minutes—Defendants are entitled to summary judgment on all claims due to lack of causation. As explained below, the Court rejects this argument.

Construing the evidence in the light most favorable to Plaintiffs, a jury could find that the blender overheated which caused the explosion when Mrs. Cerrato opened the lid to the blender cup. What is disputed is the length of time she let the blender run. Defendants contend, and Plaintiffs' own expert agrees, that Mrs. Cerrato would have had to let the blender run for significantly longer than the conflicting amounts of times that Plaintiffs have stated that she let it run. However, the dispute over the length of time that the blender ran does not undermine the fact that the blender overheated and exploded. Instead, the dispute over the length of time that the blender ran goes to the heart of Defendants' defense—that Mrs. Cerrato *misused* the blender

5

and that her misuse of the blender is what caused the blender to overheat and ultimately explode. Stated differently, even if the jury credits Plaintiffs' expert's opinion that Mrs. Cerrato let the blender continuously for at least ten minutes, the question still remains whether her running the blender continuously for at least ten minutes constitutes misuse of the blender, which could relieve Defendants of liability or limit their exposure. See High v. Westinghouse Electric Corp., 610 So. 2d 1259, 1262 (Fla. 1993)(stating that in order for strict liability to apply, the product must have been used for its intended purpose); Standard Havens Products, Inc. v. Benitz, 648 So. 2d 1192, 1197 (Fla. 1995)(stating that when the plaintiff's product liability claim sounds in negligence, the defendant can assert the defense of comparative negligence based on the plaintiff's misuse of the product).

Defendants rely on Dowdy v. Suzuki Motor Corporation, 567 Fed. Appx. 890 (11th Cir. 2014), to support their argument that Plaintiffs cannot establish causation because their expert opined that the blender must have run longer than they stated. In Dowdy, the plaintiff was riding his motorcycle when his rear wheel locked, and he crashed into a truck. See id. at 891. The plaintiff's sole theory of causation for his product liability claim was that the motorcycle's output shaft fractured and caused a piece to break loose and wedge inside the swing arm assembly tube. See id. The plaintiff's expert opined that the wedging that caused the plaintiff's wheel to lock would not have occurred if the swing arm assembly tube was round as opposed to oval. See id. The plaintiff's expert further opined that there was no evidence that any other mechanical error other than the wedging caused the accident. See id.

It turned out that the plaintiff's expert was wrong about the shape of the plaintiff's swing arm assembly tube, because it was, in fact, round. See id. Because the plaintiff's sole theory of

6

causation was undermined by his own expert's opinion, the district court granted summary judgment for the defendants due to lack of causation. See id. The appellate court affirmed, stating that because the expert's theory of the accident was based on the erroneous belief that the swing arm assembly tube was oval, the plaintiff was unable to prove causation. See id. at 892. The appellate court pointed out that because the expert opined that wedging would be impossible in a round swing arm assembly tube, the plaintiff could not prove that wedging occurred. See id. at 893. Since the plaintiff could not prove that wedging occurred, he could not prove causation. See id.

This Court is not persuaded by Defendants' reliance on Dowdy, because in Dowdy there was no evidence to support the plaintiff's wedge theory, which was the sole theory of causation. Conversely, in the instant case, there is evidence that the blender overheated and exploded. The fact that Plaintiffs appear not to have accurately explained the amount of time that the blender ran does not undermine the fact that the blender did, in fact, overheat and explode. As such, the jury will have to determine whether the blender overheated and exploded due to a design defect and/or due to misuse.

### B. Inadequate Warning Theory

Defendants also argue that they are entitled to summary judgment on Plaintiffs' claims of inadequate warning. Courts have provided the following guidance regarding claims of inadequate warnings:

> Unless the danger is obvious or known, a manufacturer has a duty to warn where its product is inherently dangerous or has dangerous propensities. . . . [In order] "[t]o warn adequately, the product label must make apparent the potential harmful consequences. The warning should be of such intensity as to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger."

7

> In addition, "[a] warning should contain some wording directed to the significant dangers arising from failure to use the product in the prescribed manner, such as the risk of serious injury or death."

Scheman-Gonzalez v. Saber Mfg. Co., 816 So. 2d 1133, 1139 (Fla. 4th DCA 2002)(internal citations omitted).

Defendants argue that Plaintiffs' inadequate warnings theory fails because: (1) Plaintiffs cannot establish that a product defect caused the incident and Mrs. Cerrato's injuries; and (2) Plaintiffs' expert does not provide any causation opinion that different warnings would have resulted in a different outcome. As explained below, the Court rejects these arguments.

Defendants first argue that Plaintiffs' inadequate warnings theory fails because Plaintiffs cannot establish that a product defect caused the incident and their injuries. However, the Court has already addressed and rejected this argument in the prior "Causation" section of this Order.

Next, Defendants argue that Plaintiffs' inadequate warnings theory fails because Plaintiffs' expert does not provide any causation opinion that different warnings would have resulted in a different outcome. However, Defendants fail to acknowledge that Plaintiffs' expert has opined that the warnings at issue were inadequate.

Specifically, Plaintiffs' expert, Dr. Glen Stevick, opined that Defendants' warnings were inadequate because they "do not adequately inform the user of the temperature and pressure dangers that occur if the unit is used for more than 1 minute." (Doc. No. 51-1, ¶ 50). Additionally, Dr. Stevick pointed to the following warning to show why he believes it is inadequate:

> Never allow the motor to run for more than **one minute** at a time, as it can cause permanent damage to the motor. If the motor stops working, unplug the Power Base and let it cool for an hour before attempting to use it again. Your **NUTRIBULLET** has an internal

8

thermal breaker that shuts off the unit when it overheats. . . .

(Doc. No. 26-1, p. 2). Dr. Stevick explained that the above warning is inadequate because "it almost implies [the blender] will shut off if it gets hot because of the way it is worded." (Doc. No. 51-2, depo. p. 86). However, he explains that the HTTS in the blender (a device that turns the blender off when it detects high temperature conditions) will only work when it is exposed to high temperatures, yet it is located directly above the exhaust fan, which is an area that stays relatively cool as long as the motor is turning the fan. (Doc. No. 51-1, ¶ 35). He further states that the HTTS has a limit of 135 degrees Celsius, a limit that will protect the motor but which is too high to protect the user. (Doc. No. 51-1, ¶ 38). When he tested the blender and let it run for over twenty minutes, the HTTS never activated to shut off the motor. (Doc. No. 51-1, ¶ 39). Given these expert opinions, the Court rejects Defendants' argument that Plaintiffs have not provided expert testimony that the warnings were inadequate.

To the extent that Defendants argue that there must be an expert opinion that specifically opines that different warnings would have resulted in a different outcome, Defendants fail to cite to legal authority within Florida or the Eleventh Circuit to support that specific proposition. Instead, the Florida cases cited by Defendants stand for the proposition that the inadequacy of a warning must be proved by expert testimony. See Upjohn Co. v. MacMurdo, 562 So. 2d 680, 683 (Fla. 1990); Haggerty v. Upjohn Co., 950 F. Supp. 1160, 1168 (S.D. Fla. 1996). Furthermore, these two cases address warnings regarding prescription drugs. Thus, the Court is not persuaded by Defendants' argument.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendants' Motion for Summary Judgment (Doc. No. 51) is **DENIED**.

(2) Each party may file *one* motion in limine containing all of their arguments in a single document not to exceed 25 pages by *November 16, 2017*. Responses thereto must be filed by *November 27, 2017*.

(3) The parties' joint pretrial statement must be filed by *December 1, 2017.*

**DONE AND ORDERED** at Tampa, Florida, this 7th day of November, 2017.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge