UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHYLLIS B. CERRATO and
GERMAN CERRATO,

      Plaintiffs,

v.                                                               Case No. 8:16-cv-3077-T-24 JSS

NUTRIBULLET, LLC and
CAPITAL BRANDS, LLC,

      Defendants.
_____/

**<u>ORDER</u>**

This cause comes before the Court on Defendants' Motion in Limine. (Doc. No. 81). Plaintiffs oppose the motion. (Doc. No. 84). The Court addressed this motion at the pretrial conference on December 6, 2017. The motion is granted to the extent explained below.

**<u>I. Background</u>**[1]

Plaintiffs Phyllis and German Cerrato bought Defendants' NutriBullet Pro 900 blender on December 20, 2014. Once home with the blender, Mrs. Cerrato opened the blender and placed ingredients inside it to make a smoothie. She turned the blender on, and once the ingredients reached her desired consistency, she attempted to turn the blender off, but she contends that she was unable to do so.

The blender does not have an "on/off" switch. Instead, the blender consists of a cup that holds the ingredients to be blended, a lid that contains the blending blades, and a base that contains the motor. There are three locking tabs on the cup that are used to physically secure the

---

[1]The background regarding Mrs. Cerrato's use of the blender is presented according to Plaintiffs' version of the facts solely to provide context for this motion.

cup onto the motor base. When the cup is twisted into the base, the locking tabs push the activator buttons down, which turns the motor on. When the cup is twisted off the base, the activator buttons release, and the motor turns off.

Because Mrs. Cerrato was unable to twist the cup off and stop the motor, she unplugged the blender to make it stop. She contends that she waited approximately twenty minutes for it to cool down before trying to open it. When Mrs. Cerrato tried to open the lid, the contents inside the cup exploded, severely burning her and causing property damage to her kitchen.

As a result of the incident, Plaintiffs filed suit against Defendants, asserting three claims. In Count I, Plaintiffs assert a negligence claim based on Defendants' alleged defective design of the blender and alleged inadequate warnings of serious injury that could result from the blender overheating. In Count II, Plaintiffs assert a strict liability claim, alleging that the blender's design and inadequate warnings made it defective and unreasonably dangerous. In Count III, Plaintiffs assert a breach of express and implied warranties claim.

Plaintiffs' design defect and inadequate warning claims can be more specifically described as the following: First, Plaintiffs contend that the blender has a design defect in that it should have a motor timer set to approximately one minute and/or a second thermal cut-off switch in order to prevent the blender from overheating. Second, they contend that the blender came with inadequate warnings because the warnings do not adequately inform the user of the temperature and pressure dangers that occur if the blender is used for more than one minute.

**II. Motion in Limine**

Defendants move to preclude four types of evidence and argument: (1) Mrs. Cerrato's military service and accolades; (2) Defendants' subsequent remedial measures to the blender's

warnings; (3) other accident reports and consumer complaints; and (4) provoking the jury to do internet searches concerning NutriBullet. Accordingly, the Court will address each category at issue.

### A. Military Service and Accolades

First, Defendants move to preclude evidence and argument regarding Mrs. Cerrato's military service and accolades. While Defendants concede that Mrs. Cerrato should be allowed to state that she has been employed by the military when testifying regarding her personal background, Defendants argue that Plaintiffs may attempt to use evidence and argument regarding her military service and accolades to improperly bolster her credibility and character given her inconsistent statements regarding exactly how the incident occurred.

Plaintiffs respond that Mrs. Cerrato's past and present employment in the army is relevant to her claim for damages. Plaintiffs initially argued that since she is claiming damages for lost wages and impaired earning capacity, "[h]er past and current employment with the military, her pay, awards, [and] promotions" are relevant. (Doc. No. 84).

The Court agrees that Mrs. Cerrato's employment in the military immediately prior to the incident and continuing through trial would be relevant to the extent that she was seeking damages for lost wages and impaired earning capacity. However, at the pretrial conference, Plaintiffs informed the Court that Mrs. Cerrato was no longer seeking damages for lost wages and impaired earning capacity. Yet she contends that her military employment is still relevant to her claim for non-economic emotional distress damages.

Upon consideration, the Court finds that Mrs. Cerrato may provide background information regarding her employment with the military, and she may also provide evidence

3

regarding how her injuries from the blender have affected her military employment. However, the Court will not let her military service become a focus of her testimony or be used to bolster her credibility. The Court does not see the relevance of any awards or accolades that Mrs. Cerrato may have received, and she will not be permitted to testify as to those matters. As such, the Court grants Defendants' motion on this issue to the extent explained above.

### B. Subsequent Remedial Measures

Second, Defendants move to preclude evidence and argument regarding Defendants' subsequent changes to the blender's warnings, arguing that such is precluded under Federal Rule of Evidence 407. Rule 407 provides the following:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or–if disputed–proving ownership, control, or the feasibility of precautionary measures.

F.R.E. 407.

Plaintiffs respond that the subsequent changes to the blender's warnings are admissible to show feasibility and for impeachment. As explained below, the Court rejects Plaintiffs' arguments on this issue.

Plaintiffs argue that feasibility is at issue because Defendants have not stipulated that alternative warnings would be feasible and because Defendants' defense is that Mrs. Cerrato's injury resulted from her failure to read and follow Defendants' warnings. The Court, however,

4

disagrees that this puts feasibility into issue. It seems that Plaintiffs are confusing feasibility (i.e., whether better instructions are possible) with the issue of whether better instructions were required as a matter of law. Accordingly, the Court finds that the feasibility of alternative warnings—and thus whether better instructions were possible—is not in issue, and as such, Defendants' subsequent changes to the blender's warnings cannot come in on that basis.

Plaintiffs also argue that the subsequent changes to the blender's warnings are admissible for impeachment. Plaintiffs point out that Defendants argue that the danger of the blender overheating was open and obvious, and as such, Plaintiffs should be allowed to use the subsequent changes in the instructions to impeach Defendants on that issue. The flaw in Plaintiffs' argument is that just because Defendants chose to change their instructions to warn of additional overheating dangers, such does not mean that Defendants were required to do so as a matter of law. Defendants are free to warn of dangers that the law may find to be open and obvious dangers, so the fact that Defendants have changed their instructions to warn of the overheating danger is not an admission that their prior instructions were legally inadequate. Plaintiffs are attempting to use Defendants' subsequent remedial measures in a manner prohibited by Rule 407.

Plaintiffs also contend that Defendants' subsequent remedial measures can be used to impeach Defendants' theory that Mrs. Cerrato misused the blender and that her misuse was not foreseeable. Again, this is simply a restatement of Plaintiffs' prior impeachment argument and an attempt to use Defendants' subsequent remedial measures in a manner prohibited by Rule 407.

Accordingly, the Court grants Defendants' motion on this issue.

### C. Other Accident Reports and Consumer Complaints

Third, Defendants move to preclude evidence and argument regarding other accident reports and consumer complaints. Specifically, Defendants point to four categories of evidence that they believe are inadmissible: (1) a spreadsheet filed under seal (Doc. No. S-85) containing various accident reports and consumer complaints; (2) documents filed under seal relating to a third-party incident that occurred on November 6, 2014 and was reported to Kohl's (Doc. No. S-88); (3) documents filed under seal relating to a third-party incident that occurred on December 26, 2014 (Doc. No. S-88); and (4) evidence of other lawsuits, media coverage, and/or news regarding other alleged NutriBullet incidents or claims. Accordingly, the Court will address each category of evidence.

#### 1. Spreadsheet Containing Accident Reports and Complaints

Defendants seek to preclude evidence and argument regarding a spreadsheet they produced and filed under seal (Doc. No. S-85) containing various accident reports and consumer complaints. Defendants argue that the incidents described therein are not substantially similar to the incident in the instant case. The Eleventh Circuit has explained the test for admissibility of other incidents as follows:

> We have held that "evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." Because of the potential prejudicial impact of prior [incidents], courts have developed limitations governing their admissibility. First, conditions substantially similar to the occurrence in question must have caused the prior [incident]. Second, the prior [incident] must not have occurred too remote in time. Determining the remoteness of evidence is within the trial judge's discretion.

Jones v. Otis Elevator Co., 861 F.2d 655, 661–62 (11th Cir. 1988)(internal citations omitted).

The substantial similarity "doctrine applies to protect parties against the admission of unfairly prejudicial evidence, evidence which, because it is not substantially similar to the accident or incident at issue, is apt to confuse or mislead the jury." Heath v. Suzuki Motor Corp., 126 F.3d 1391, 1396 (11th Cir. 1997).

Upon review of the spreadsheet, it appears to the Court that only eleven of the listed incidents occurred prior to Plaintiffs' December 20, 2014 incident and could be used to show that Defendants had notice of a defect.[2] In those eleven incidents, the blender did not turn off. However, nine of those eleven incidents involved the activator buttons getting stuck and causing the blender to continue to run after the cup was removed from the base. That "defect" is not the alleged defect at issue in this case.[3] In the instant case, Plaintiffs do not contend that the activator buttons became stuck, and Plaintiffs' incident did not involve the blender continuing to run after the cup was removed from the base. Instead, Plaintiffs contend that the blender overheated and exploded, which did not happen in nine of the prior incidents. As such, these nine incidents are not substantially similar to the incident in this case and their admission would be unfairly prejudicial to Defendants.

The final two incidents in the spreadsheet that occurred prior to December 20, 2014 do not contain any detail about the incidents other than that the blender would not turn off.[4]

---

[2]The Order Dates (i.e., the date that Defendants responded to the customers) for the eleven incidents are as follows (in the order they appear on the spreadsheet): (1) 2/16/15, (2) 11/4/14, (3) 9/2/14, (4) 9/29/14, (5) 1/17/15, (6) 2/2/14, (7) 12/31/14, (8) 11/6/14, (9) 11/30/14, (10) 11/18/14, and (11) 4/19/14. (Doc. No. S-85).

[3]The Order Dates for the nine incidents are as follows: (1) 2/16/15, (2) 11/4/14, (3) 9/2/14, (4) 9/29/14, (5) 1/17/15, (6) 2/2/14, (7) 12/31/14, (8) 11/6/14, and (9) 11/30/14. (Doc. No. S-85).

[4]The Order Date for the two incidents are 11/18/14 and 4/19/14. (Doc. No. S-85).

Without more detail, the Court cannot tell whether these two incidents are substantially similar to Plaintiffs' incident. However, Plaintiffs contend that their blender overheated and exploded, which does not appear to have happened in either of the final two prior incidents.

Plaintiffs argue that the substantial similarity of these eleven incidents has already been determined by the magistrate judge and conceded by Defendants in connection with Plaintiffs' motion to compel. (Doc. No. 43, Doc. No. 45, p. 13; Doc. No. 46). However, the fact that Defendants conceded that these incidents were discoverable because they were similar to the subject incident due to the blender cup not being able to be twisted off does not mean that Defendants conceded, or that the magistrate judge found, that these incidents meet the substantial similarity test for admissibility. The Court finds that they do not.

The remaining incidents contained in the spreadsheet occurred after Plaintiffs' incident. The former Fifth Circuit has stated the following regarding the admissibility of subsequent incidents:

> While an accident occurring after the one [at issue] . . . might not [be] relevant to show defendant's prior knowledge or notice of a product defect, it may [be] highly relevant to causation . . . . Indeed, this Court has held that when causation is an issue, provided a proper foundation has been laid, evidence of subsequent accidents may be admissible to prove causation and to rebut the opposing party's causation theory.

Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 617 (5th Cir. 1977).

However, causation is not really at issue in the instant case—it appears undisputed that the blender overheated, causing an explosion that resulted in Plaintiffs' damages. Plaintiffs have not shown the relevance of these subsequent incidents set forth on the spreadsheet.

Additionally, Defendants argue that this spreadsheet is not admissible because it contains

8

hearsay. In support of this contention, Defendants cite to Moon v. Advanced Medical Optics, Inc., 2010 WL 11500832 (N.D. Ga. Dec. 29, 2010).

In Moon, the plaintiffs wanted to introduce into evidence the defendant's CATSWEB entries containing complaints reported to the defendant due to the use of the defendant's product. See id. at *2. The court denied the plaintiffs' request, stating the following:

> [T]he Court finds that Plaintiffs have not shown that the reports contained in Defendant's CATSWEB database are business records under Rule 803(6).[5] Plaintiffs failed to demonstrate that the CATSWEB entries were made as part of a regularly conducted business activity, or that the entries were prepared at, or near, the time of the alleged event. Further, as Defendant points out, the CATSWEB reports often were based on subjective communications from lay persons, sometimes without confirmation that the person reporting the incident had knowledge of the event at issue. The Court therefore cannot find that the CATSWEB entries and reports relating to those entries qualify for the business records exception. Additionally, as Defendant accurately points out, many of those CATWEB [sic] entries and reports contain layers of hearsay, and Plaintiffs have not shown that each of those layers qualifies for a hearsay exception. Finally, Plaintiffs cannot avoid the hearsay rules by arguing that they seek to introduce the CATSWEB entries and reports to show notice—Plaintiffs necessarily are seeking to introduce the CATSWEB entries and reports to show the truth of the matters contained in those documents.

Id. at *9.

Likewise, in the instant case, Plaintiffs have not shown that any hearsay exception applies. Accordingly, the Court agrees with Defendants that the spreadsheet is inadmissible as

---

[5]Federal Rule of Evidence 803(6) provides that a business record is not hearsay if it is a record of an event that meets all of the following requirements: "**(A)** the record was made at or near the time by--or from information transmitted by--someone with knowledge; **(B)** the record was kept in the course of a regularly conducted activity of a business . . . ; **(C)** making the record was a regular practice of that activity; **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

9

substantive evidence because it contains hearsay.

### 2. Documents Relating to the November 6, 2014 Incident

Next, Defendants seek to preclude evidence and argument regarding documents relating to a third-party incident that occurred on November 6, 2014 and was reported to Kohl's. The only facts that can be determined from these documents is that the blender exploded and burned two people. (Doc. No. S-88, p. 2). However, the portion of the document describing what led to the incident is completely illegible, and as such, the Court cannot determine if this incident is substantially similar to Plaintiffs' incident. The Kohls' blender could have been filled with hot liquids, could have been plugged into an inadequate power source, could have had activator buttons that were stuck, or any number of factors could have contributed to and/or caused the Kohls' blender to explode. If the Court were to let this document into evidence (or allow testimony about the existence of this exploding blender), such would be unfairly prejudicial to Defendants, as the jury may simply assume that both Plaintiffs' blender and the Kohls' blender could not be turned off, overheated, and exploded.

Additionally, these documents are hearsay, and they are inadmissible for that reason as well. Accordingly, the Court grants Defendants' motion on this issue.

### 3. Documents Relating to the December 26, 2014 Incident

Next, Defendants seek to preclude evidence and argument regarding documents relating to a third-party incident on December 26, 2014 (six days after Plaintiffs' incident). These documents include a letter from the claimant's attorney describing that the claimant used the NutriBullet blender to make oatmeal and the blender overheated, exploded, and severely burned him. This incident is inadmissible to prove notice to Defendants, since it occurred after

Plaintiffs' incident.

To the extent that Plaintiffs want to use this as evidence to show that contents in the blender can, in fact, overheat, such an argument would be flawed for two reasons. First, it does not appear that Defendants dispute that contents in the blender can overheat and explode if the blender is left running for more than one minute. Second, Plaintiffs have not shown that this incident is substantially similar to Plaintiffs' incident, as Mrs. Cerrato was blending cold ingredients to make a smoothie, while the claimant was blending oatmeal, which may have been hot to begin with (and the NutriBullet instructions state not to blend hot liquids). (Doc. No. 26-1, p. 2). Additionally, the Court notes that these documents are hearsay, and they are inadmissible for that reason as well. Accordingly, the Court grants Defendants' motion on this issue.

### 4. Questioning Defendants' Corporate Representative about Other Incidents

Plaintiffs stated at the pretrial conference that they did not necessarily intend to introduce the spreadsheet, the documents relating to the incident that occurred on November 6, 2014 and was reported to Kohl's, or the documents relating to the incident that occurred on December 26, 2014. Instead, Plaintiffs stated at the pretrial conference that they intended to ask Defendants' corporate representative at trial whether he was aware of any other incidents in which one of their blenders exploded and burned a consumer. Plaintiffs informed the Court that they were aware of such an incident, which led to a lawsuit being filed in the Southern District of Florida. See Jules v. Nutribullet, LLC, case number 1:16-cv-20265-BB.

Plaintiffs do not point to any evidence in the Jules case, and the Court can only discern

the facts from the amended complaint filed therein.[6]  Based on the allegations contained in the amended complaint, it appears that a father was using the NutriBullet blender on July 22, 2014 when the blender began emitting smoke.  The father attempted to unplug the blender, but before he could, the blender exploded and burned his minor son.  There are no allegations of what he was attempting to blend, but he alleges that NutriBullet should have warned him that placing hot liquids or foods into the blender could cause it to explode.  There are no allegations regarding how long he ran the blender, but he alleges that NutriBullet should have warned him that running the blender for more than one minute could cause the blender to explode.

It is not clear when Defendants learned of this incident, as the case was originally filed in state court on February 9, 2015 and was removed to the Southern District of Florida court on January 21, 2016.  Plaintiffs' incident occurred on December 20, 2014, and without some evidence that Defendants knew of this incident prior to Plaintiffs' incident, this incident cannot be used to show Defendants' notice of the danger of its blender overheating.  Furthermore, without knowing more information, the Court cannot find that this incident is substantially similar to Plaintiffs' incident.

Accordingly, before Plaintiffs question the corporate representative or any witness about any prior or subsequent incidents with the NutriBullet blender, Plaintiffs must make a proffer to the Court outside of the presence of the jury so that the Court can determine if such questions are permissible.

### 5.  Other Lawsuits, Media Coverage, and News

Next, Defendants seek to preclude evidence and argument regarding other lawsuits, media coverage, and/or news about other alleged NutriBullet incidents or claims.  Defendants,

---

[6]A review of the docket sheet in that case reveals that the case settled.

however, are unaware of any such evidence, and Plaintiffs stated at the pretrial conference that they do not oppose Defendants' motion on this issue. Accordingly, the Court grants Defendants' motion on this issue.

### D. Internet Searches

Fourth, Defendants move to preclude Plaintiffs from provoking the jury to do internet searches concerning NutriBullet or Defendants. At the pretrial conference, Plaintiffs stated that they agree to this prohibition. Accordingly, the Court grants Defendants' motion on this issue.

## III. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion in Limine (Doc. No. 81) is **GRANTED** as stated above.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of December, 2017.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge